Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| IN-FORMATION STUDIO, LLC<br><br>Recurrente<br><br>V.<br><br>HERNÁNDEZ BAUZÁ, PSC ARCHITECTS, MUNICIPIO AUTÓNOMO DE YABUCOA<br><br>Recurrido | TA2025RA00171 | *Revisión Administrativa* Procedente de la Junta de Subastas Municipio Autónomo de Yabucoa<br><br>Sobre: Revisión de Subasta<br><br>Caso Núm.: Subasta Formal Núm.: 12/ Serie 2024-2025 Diseño de Transbordo y Centro Reciclaje |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón.

Rodríguez Casillas, juez ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 28 de octubre de 2025.

Comparece ante nos IN-FORMATION STUDIO, LLC, (en adelante, "IN-FORMATION" o "parte recurrente") y nos solicita que revisemos la *Resolución* emitida el 23 de julio de 2025 por la Junta de Subasta del Municipio de Yabucoa (en adelante, "Junta de Subasta").[1] Mediante esta se adjudicó la *buena pro* a favor de Hernández-Bauzá, PSC Architects (en adelante, "Hernández-Bauzá").[2]

Por los fundamentos que expondremos a continuación, **revocamos** la *Resolución* recurrida.

**-I-**

El caso de autos se originó el **2 de mayo de 2025**, ocasión en que el Municipio Autónomo de Yabucoa (en adelante, "Municipio") publicó un *Aviso de Subasta Formal Núm. 12 / Serie 2024-2025* para la *Adquisición de Servicios de Arquitectura e Ingeniería para el Diseño*

---

[1] Notificada el 8 de agosto de 2025.
[2] Véase, Entrada Núm. 1 del Sistema Unificado de Manejo y Administración de Casos (en adelante, "SUMAC").

*de un Centro de Transbordo y Centro de Materiales Reciclables.*[3] En este anunció que estaría recibiendo propuestas para proporcionar tales servicios hasta el 4 de junio de 2025.[4] Acompañó la siguiente descripción:

> Esta Solicitud de Propuestas ("RFP", por sus siglas en inglés) busca seleccionar una empresa para proporcionar Servicios de Arquitectura e Ingeniería, para el **Diseño del Centro de Transbordo y Centro de Reciclaje para el Municipio de Yabucoa**, bajo la subvención(s) del CDBG-MIT por un periodo de **6 meses (180 días)** y una extensión del contrato de **18 meses (540 días)** para la supervisión de la construcción. El Proponente Seleccionado debe proporcionar estudios de campo, diseño, permisos, documentación ambiental, paquete de licitación y supervisión de la construcción relacionados con los estudios preparados por otros consultores o proveedores, brindar apoyo técnico en los procesos de contratación de servicios profesionales y preparación de la subasta de construcción para el proyecto, manejo de construcción, supervisar el cumplimiento del contratista de la construcción con las leyes locales y federales durante la fase de construcción, revisar y evaluar las facturas y gestionar el proceso de cierre.

El **23 de julio de 2025**,[5] la Junta de Subasta emitió una *Resolución.*[6] En esta consignó que recibió propuestas de las compañías In-Formation Studio, LLC; TCM Group PSC; Hernández-Bauzá, PSC Architects; Green Engineering Group Abacus Architecture PSC y; JA Surveying, Inc. Detalló que la propuesta más económica fue la de IN-FORMATION, no obstante, al desglosar los componentes de diseños y estudios ambientales, determinó que su propuesta no era la más económica en esos renglones. Por lo cual, adjudicó la *buena pro* a favor de la firma Hernández-Bauzá, por ser la opción más beneficiosa para el Municipio, a pesar de no tener el mejor costo en la suma total de su propuesta.

Inconforme, el **18 de agosto de 2025**, IN-FORMATION presentó el recurso de revisión judicial que nos ocupa y señaló la comisión de los siguientes cuatro (4) errores:

---

[3] Véase, Entrada Núm. 1 de SUMAC.
[4] De la *Resolución* emitida por la Junta de Subastas surge que la entrega de propuestas se pautó para el 14 de mayo de 2025. No obstante, dicha fecha no es cónsona con la establecida en el *Aviso de Subasta.*
[5] Notificada el 8 de agosto de 2025.
[6] Véase, Entrada Núm. 1 de SUMAC.

1) *ERRÓ EL MAY* [Municipio] *AL EMITIR UNA CARTA DE ADJUDICACIÓN DEFECTUOSA QUE OMITE LAS* [sic.] *CALIFICACIONES DE CADA LICITADOR EN COMPARACIÓN CON LA PROPUESTA SOLICITADA.*

2) *ERRÓ EL MAY* [Municipio] *AL ADJUDICAR LA BUENA PRO AL SEGUNDO LICITADOR MÁS BAJO SIN PROVEER FUNDAMENTOS SOBRE CÓMO DICHA PROPUESTA PRESENTA UN MEJOR BENEFICIO PARA EL MAY* [Municipio].

3) *ERRÓ EL MAY* [Municipio] *AL NO HACER PÚBLICOS LOS RESULTADOS DE SU EVALUACIÓN CONFORME A LOS INCISOS 6.7 y 10.14 DEL PLIEGO DE SUBASTA Y CONTRARIO A LA LEY.*

4) *ERRÓ EL MAY* [Municipio] *AL NO INCLUIR EN EL PLIEGO DE SUBASTA QUE LOS ÍTEMS DE DISEÑO Y ESTUDIOS AMBIENTALES SERÍAN DETERMINANTES EN SU SELECCIÓN DE UN LICITADOR AGRACIADO.*

El **21 de agosto de 2025**,[7] emitimos una *Resolución* en la cual concedimos a la parte recurrida un término de diez (10) días para presentar su posición.

El **12 de septiembre de 2025**, IN-FORMATION sometió una *MOCIÓN DISPOSITIVA SOLICITANDO REVISIÓN SIN COMPARECENCIA DE LA PARTE RECURRIDA*. Solicitó que, transcurrido el término de diez (10) días, se dispusiera del recurso sin el beneficio de la comparecencia de la parte recurrida.

Ese mismo día, el Municipio radicó una *MOCIÓN EN SOLICITUD SE DESESTIME* [SIC.] *EL RECURSO PRESENTADO POR FALTA DE JURISDICCIÓN*. Adujo que, al no incluirse a los demás licitadores como parte en el caso de epígrafe, el recurso no se perfeccionó y, por tanto, este tribunal carece de jurisdicción.

Así pues, el **12 de septiembre de 2025**,[8] emitimos una *Resolución* en la cual concedimos a la parte recurrente un término de diez (10) días para mostrar causa por la cual no debíamos desestimar el recurso.

El **25 de septiembre de 2025**, IN-FORMATION presentó una *MOCIÓN EN OPOSICIÓN A DESESTIMACIÓN POR HABERSE*

---

[7] Notificada el 26 de agosto de 2025.
[8] Notificada el 15 de septiembre de 2025.

*PERFECCIONADO EL RECURSO DE REVISIÓN JUDICIAL.* Planteó que el Municipio compareció fuera del término concedido para expresar su posición, por lo que procedía que, en ausencia de justa causa, no se considerara su postura. Arguyó, además, que contrario a lo alegado por el Municipio, el recurso sí se perfeccionó puesto que en el epígrafe se incluyó a los licitadores agraciados y a la entidad que emitió la subasta. Solicitó se declarara No Ha Lugar a la moción de desestimación presentada por el Municipio.

El **29 de septiembre de 2025**,[9] emitimos una *Resolución* en la que declaramos *No Ha Lugar* a la solicitud de desestimación del Municipio. A su vez, declaramos *Ha Lugar* la moción en oposición radicada por IN-FORMATION y concedimos un término de diez (10) días a la parte recurrida para presentar su oposición.

Posteriormente, el **7 de octubre de 2025**, el Municipio sometió una *MOCIÓN EN LA QUE NOS ALLANAMOS A QUE SE DEJE SIN EFECTO LA NOTIFICACIÓN DE LA ADJUDICACIÓN DE LA SUBASTA Y SE DEVUELVA ANTE LA CONSIDERACIÓN DE LA JUNTA DE SUBASTA DEL MUNICIPIO AUTÓNOMO DE YABUCOA.* En esta reconoció que la notificación de la adjudicación de la subasta se alejó de la norma establecida en nuestro ordenamiento jurídico al no incorporar los requisitos mínimos que debía incluir la notificación, tales como los criterios que la Junta tomó en consideración al emitir su determinación. Por lo que, solicitó se dejara sin efecto la adjudicación de la subasta, se devolviera el caso a la Junta de Subastas y, en consecuencia, se desestimara el recurso de autos.

En la misma fecha, Hernández-Bauzá presentó un *ALEGATO DE LA PARTE RECURRIDA HERNÁNDEZ-BAUZÁ, PSC. ARCHITECTS.* Allí solicitó se declarara No Ha Lugar a la revisión judicial solicitada

---

[9] Notificada al día siguiente.

y se le impusiera a la parte recurrente el pago de honorarios de abogados, más las costas y gastos incurridos para defenderse. Fundamentó su solicitud en que, para evaluar las propuestas, el Municipio utilizó un método objetivo de acuerdo a los criterios establecidos en la Solicitud de Propuestas (RFP). Además, alegó que su propuesta no solo reunía los requisitos de documentos, sino que también presentó prueba de su experiencia, cualificaciones y su estrategia para exceder las presentaciones de los demás proponentes.

Con el beneficio de la comparecencia de ambas partes, estamos en posición de atender la controversia ante nuestra consideración.

**-II-**

**-A-**

Sabido es que los tribunales apelativos estamos llamados a conceder amplia deferencia a las agencias administrativas, pues son estas quienes cuentan con la experiencia y el conocimiento especializado en los asuntos que les han encomendado.[10]

Dispone la Sección 4.5 de la *Ley de Procedimientos Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) que *"[l]a revisión judicial de una actuación administrativa debe limitarse a evaluar la razonabilidad de la decisión recurrida, la cual deberá ser sostenida a menos que se demuestre que es arbitraria o caprichosa".*[11] Ahora, es importante señalar que a los municipios no les aplican las disposiciones de la LPAU, ya que están expresamente excluidos de la definición de "Agencia".[12]

---

[10] *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___; *Moreno Lorenzo v. Departamento de la Familia*, 207 DPR 833, 839 (2021).
[11] *Cruz v. Administración*, 164 DPR 341, 355 (2005). *Véase, además,* Ley Núm. 38–2017, según enmendada, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9675.
[12] *Puerto Rico Eco Park, Inc. v. Municipio de Yauco*, 202 DPR 525, 533 (2019). *Véase, además,* 3 LPRA sec. 9603.

No obstante, un licitador o participante de una subasta formal o un *Request for Proposal* ("RFP") puede cuestionar vía revisión judicial la adjudicación de una subasta,[13] bajo el mismo principio de deferencia judicial que se les brinda a las agencias administrativas.

**-B-**

A tono con lo antes dicho, es menester recordar que el objetivo de exigir que la contratación y las obras que realiza el Gobierno se efectúen mediante el proceso de **subastas**, es *proteger los intereses y el dinero público*. A través de las subastas se protegen los intereses del pueblo, ya que procuran conseguir *los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento*.[14]

Las subastas que se adjudican por una Junta de Subastas Municipal están reguladas por el *Código Municipal de Puerto Rico* ("Código Municipal"),[15] y el *Reglamento para la Administración Municipal 2016* Núm. 8873 ("Reglamento Núm. 8873").[16] Estas normas también regulan el derecho de revisión judicial de los licitadores o participantes.[17]

En nuestro ordenamiento jurídico, queda a discreción de cada municipio, como entidad con el conocimiento especializado, aprobar un reglamento que establezca el procedimiento y las guías a seguir en sus propias subastas.[18] Sin embargo, existen unos criterios básicos que deben ser respetados.

---

[13] *Puerto Rico Eco Park, Inc. v. Municipio de Yauco, supra*, págs. 532-533 citando *R & B Power v. ELA*, 170 DPR 606, 624 (2007).

[14] *Puerto Rico Eco Park, Inc. v. Municipio de Yauco, supra*, pág. 531. *Énfasis nuestro.*

[15] Ley Núm. 107-2020, según enmendada, conocida como *Código Municipal de Puerto Rico*, 21 LPRA sec. 7001 *et seq.*

[16] *Reglamento para la Administración Municipal 2016,* Núm. 8873 de la Oficina del Comisionado de Asuntos Municipales del 19 de diciembre de 2016.

[17] *Puerto Rico Eco Park, Inc. v. Municipio de Yauco, supra*, pág. 534.

[18] *AEE v. Maxon*, 163 DPR 434, 440 (2004).

Por lo tanto, —y como norma general— un municipio adjudicará una subasta sobre suministros de servicio, de compras o de construcción **al postor más bajo**. Esto es así puesto que, al estar de por medio el desembolso de fondos públicos, se debe promover la inversión adecuada, responsable y eficiente de los recursos económicos del Estado.[19]

Precisamente, el objetivo de las subastas es proteger el erario *"[c]onsiguiendo la construcción de obras públicas y la adquisición de servicios de calidad para el Gobierno al mejor precio posible"*.[20] La consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas debe ser el interés público en proteger los fondos del Pueblo de Puerto Rico.[21] Cónsono con lo anterior, el Código Municipal dispone en su Artículo 2.040, que:

> "[l]a Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración entre otros".[22]

Además, el precitado Artículo 2.040 en su inciso (a) establece los criterios de adjudicación:

> **a. Criterios de adjudicación** — Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor **razonable más bajo**. [...] La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones, los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y cualesquiera otras condiciones que se hayan incluido en el pliego de subasta. **La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo ... si con ello se beneficia el interés público**. <u>En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación.</u> [...].[23]

---

[19] *Aut. Carreteras v. CD Builders, Inc.*, 177 DPR 398, 404 (2009).
[20] *RBR Const., SE v. AC*, 149 DPR 836, 848 – 849 (1999).
[21] *Cordero Vélez v. Municipio de Guánica*, 170 DPR 237, 245 (2007).
[22] 21 LPRA sec. 7216.
[23] *Íd.* en el inciso (a). Énfasis nuestro.

Por otro lado, el Reglamento Núm. 8873 dispone que, como norma general de adjudicación, las subastas se adjudicarán a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento. Además, el licitador tiene que cumplir con los siguientes requisitos:

**(a)** Que cumpla con los requisitos y condiciones de los pliegos de especificaciones.

**(b)** Que sea la más baja en precio o que aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.

De adjudicarse a favor de un licitador que no haya ofrecido el costo más bajo, la Junta de Subastas deberá hacer constar por escrito las razones que justifican la adjudicación. Dicha justificación escrita deberá estar firmada por los miembros de la Junta de Subasta que la favorecieron y debe permanecer en el expediente para fines de auditoria futura.[24]

En cuanto a la adjudicación de la **buena pro**, el Reglamento Núm. 8873 establece que la Junta tendrá que determinar las ofertas susceptibles de ser consideradas para la adjudicación, tomando como guía las normas establecidas en el Reglamento, así como en la información del *Acta de Apertura y el Informe del Recaudador*.[25]

Añade el Reglamento Núm. 8873 que, *"[l]uego de hacer esa determinación preliminar, la Junta procederá a verificar en las ofertas susceptibles de ser evaluadas, cuáles han cumplido con las especificaciones y condiciones solicitadas en la subasta"*.[26]

Referente al **Aviso de Adjudicación de Subastas**, el Reglamento Núm. 8873 en la Sección 13 del Capítulo VIII dispone que:

(1) Una vez la Junta haya seleccionado el licitador o los licitadores que obtuvieran la buena pro de la subasta, se preparará una minuta donde se hará constar las proposiciones recibidas y el otorgamiento de la subasta incluyendo todos los pormenores de la adjudicación. Los originales deberán ser conservados en un libro de actas bajo la custodia de la Junta de Subastas.

(2) **La decisión final de la Junta se notificará por escrito y por correo certificado con acuse de recibo, a todos los licitadores que participaron en la subasta y será firmada por el Presidente de la Junta**. No se adelantará a licitador

---

[24] Sec. 11, Cap. VIII, Parte II, Reglamento Núm. 8873, *supra.* Énfasis nuestro.
[25] Sec. 10, Cap. VIII, Parte II, Reglamento Núm. 8873, *Íd.*
[26] *Íd.*

alguno, información oficial sobre los resultados de la adjudicación, hasta tanto la Junta le haya impartido su aprobación final.

**(3) La notificación de adjudicación o la determinación final de la Junta, que se enviará a todos los licitadores que participaron en la subasta, debe contener la siguiente información:**

    **(a) nombre de los licitadores;**

    **(b) síntesis de las propuestas sometidas;**

    **(c) factores o criterios que se tomaron en cuenta para adjudicar la subasta y razones para no adjudicar a los licitadores perdidosos;**

    **(d) derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el Tribunal de Apelaciones, y el término para ello, que es dentro del término jurisdiccional de diez (10) días contados desde el depósito en el correo de la notificación de adjudicación;**

    **(e) fecha de archivo en auto de la copia de la notificación y la fecha a partir de la cual comenzará a transcurrir el término para impugnar la subasta ante el Tribunal de Apelaciones.**

(4) Ante la posibilidad de alguna impugnación de una adjudicación en una subasta, no se formalizará contrato alguno hasta tanto transcurran diez (10) días contados desde el depósito en el correo de la notificación del acuerdo final o adjudicación. La anterior prohibición aplicará aún en los casos de subastas en las cuales participó un solo licitador,

    Transcurrido el término de los diez (10) días de la notificación o adjudicación, el municipio otorgará el contrato escrito, con los requisitos de Ley aplicables y conforme el Capítulo de Contratos Municipales de este Reglamento.[27]

Conforme a lo antes expuesto, los municipios pueden adjudicar la subasta al postor que consideren más apropiado, aun cuando no sea el más bajo, si con ello se sirve al interés público. A tenor con esa interpretación, en los casos de subastas, la revisión judicial se circunscribe a determinar si la adjudicación al licitador agraciado es razonable y se sostiene con la evidencia sustancial que obra en el expediente de subasta.[28]

**-III-**

En el caso de epígrafe IN-FORMATION argumenta que incidió el Municipio al: (1) emitir una carta de adjudicación defectuosa que omite las calificaciones de cada licitador en comparación con la propuesta solicitada; (2) adjudicar la *buena pro* al segundo licitador

---

[27] Sec. 13, Cap. VIII, Parte II, Reglamento Núm. 8873, *supra. Énfasis nuestro.*
[28] *Caribbean Communication v. Pol. de PR,* 176 DPR 978 (2009).

más bajo sin proveer fundamentos sobre cómo dicha propuesta presenta un mejor beneficio para el municipio; (3) no hacer públicos los resultados de su evaluación conforme a los incisos 6.7 y 10.14 del pliego de subasta y contrario a la ley y; (4) no incluir en el pliego de subasta que los ítems de diseño y estudios ambientales serían determinantes en su selección de un licitador agraciado.

De otra parte, el Municipio reconoció que se apartó de la doctrina elaborada por el Tribunal Supremo de Puerto Rico al no incorporar en la notificación de adjudicación de subasta las calificaciones de cada licitador, ni los criterios que tomó la Junta de Subastas para su determinación. Por lo cual, se allanó a que se dejara sin efecto la adjudicación, y se devolviera el asunto a la Junta de Subastas.

Un examen del expediente, en efecto surge que no se cumplió cabalmente con la notificación de adjudicación de subasta conforme establecido en nuestro ordenamiento jurídico; ante esa realidad, el Municipio acude ante este foro intermedio y se allana a la revocación de la notificación de adjudicación de subasta que nos ocupa.

Por lo antes dicho, entendemos que procede la revocación de la *Resolución* recurrida.

**-IV-**

Por los fundamentos antes expuestos, revocamos la *Resolución* recurrida y, en consecuencia, dejamos sin efecto la adjudicación de la subasta. Se ordena la devolución del asunto ante la consideración de la Junta de Subastas.

Lo acordó el Tribunal y certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones